John R. Parker, Jr. (SBN 257761)
**ALMEIDA LAW GROUP LLC**
3550 Watt Avenue, Suite 140
Sacramento, California 95821
Tel: (916) 616-2936
jrparker@almeidalawgroup.com
*[Additional attorneys listed in signature block]*

*Attorneys for Plaintiff & the Putative Classes*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADINE WINSTON, *individually and on behalf of all others similarly situated*, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| OTTER.AI, INC. | |
| Defendant. | |

Plaintiff Nadine Winston ("Plaintiff"), individually and on behalf of all others similarly situated brings this putative class action lawsuit against Defendant Otter.ai, Inc. ("Defendant" or "OtterAI"). Plaintiff's allegations are based upon personal knowledge as to herself and her own acts, and upon information and good faith belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys.

1.     Defendant is a major transcription and productivity platform with over 25 million users worldwide that has recorded over a billion meetings and integrates with popular communication services like Zoom, Google Meet, and Microsoft Teams.

2.     Defendant publicly promises to protect user privacy and to maintain transparency as it states that it recognizes conversations contain sensitive information and is committed to keeping information private and secure.

3.     But, in actuality, OtterAI engages in covert surveillance practices that violate the privacy rights of millions of non-consenting meeting participants.

4.     When users connect their calendars, Defendant automatically joins all scheduled meetings as a bot that appears like a regular participant, typically showing up as "Anna's Notetaker (Otter.ai)" or another similar marker.

5.     Unlike built-in recording features in Zoom or Teams that clearly announce recordings and require participant consent by muting cameras and microphones until agreement is given, Defendant provides no visual or audio warnings that its recording, transcribing, and taking screenshots. The bot blends in with regular participants, making it virtually impossible for attendees to know they're being recorded in real-time.

6.     Participants only discover they were recorded when they receive an email after the meeting containing partial transcripts and screenshots.

7.     Users cannot access the full recording unless they create an account, by which point their private conversations have already been captured, stored on Defendant's servers, and distributed to all meeting invitees regardless of whether they attended.

CLASS ACTION COMPLAINT

8.    Defendant collects personal information including names, emails, and contact details from various platforms, linking this data to specific speakers and their words in recordings, and uses this harvested data to send promotional emails to non-users, attempting to convert them into customers.

9.    This practice affects all types of sensitive meetings including confidential business discussions, job interviews, legal consultations, medical appointments, support groups, and religious gatherings, capturing private information without informed consent.

10.    Plaintiff brings this class action lawsuit on behalf of herself and millions of affected individuals across the United States to hold Defendant accountable for these privacy violations under statutory and common law, seeking remedies for the unauthorized recording, storage, and commercial exploitation of their private conversations and personal information.

## PARTIES

11.    Plaintiff Nadine Winston is a natural person who, at all times relevant hereto, resided in Northbrook, which is in Cook County, Illinois.

12.    Defendant Otter.AI, Inc. is a corporation incorporated and existing under the laws of Delaware with a principal place of business in Mountain View, which is in Santa Clara County, California.

## JURISDICTION & VENUE

13.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"), because: (a) this class action lawsuit involves at least 100 members in the proposed Classes; (b) at least one member of the proposed Classes is a citizen of a state different from Defendant; and (c) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

14.    This Court has personal jurisdiction over Defendant because it maintains its principal place of business in this District and regularly conducts and transacts business in this District.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because Defendant resides in this District, maintaining its principal place of business

here, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

16.    The Northern District of California, San Jose Division is the appropriate division for this action because Defendant's principal place of business in Mountain View, California which is in Santa Clara County. *See* 28 U.S.§ 84; N.D. Cal. L.R. 3-2(c) & (d).

## FACTUAL BACKGROUND

17.    The shift toward online work following the COVID pandemic has turned into a permanent aspect of the labor landscape: in 2023, more than 35% of U.S. full-time workers regularly worked remotely, with even more participating in hybrid work arrangements. Meetings that once took place in conference rooms and coffee shops now occur via Zoom, Microsoft Teams, Google Meet, and other video conferencing platforms.[1]

18.    Harvard Business Review found a 60% increase in remote meetings per employee between 2020 and 2022.[2]

19.    With each accepted virtual invitation, participants assume they're joining private conversations among peers or professionals, free from undisclosed monitoring and recording without their consent.[3]

20.    To protect participant privacy, Microsoft Teams, Zoom, and other recording-capable platforms now automatically mute participants and disable cameras before recording activation. Each participant must affirmatively consent to recorded proceedings by clicking an authorization

---

[1] Diccon Hyatt, *Remote Work Is Here To Stay, New Data Shows*, INVESTOPEDIA (June 28, 2024), https://www.investopedia.com/remote-work-is-here-to-stay-new-data-shows-8671287 (last visited September 9, 2025).

[2] Andrew Brodsky and Mike Tolliver, *No, Remote Employees Aren't Becoming Less Engaged*, HARVARD BUSINESS REVIEW (Dec. 6, 2022), https://hbr.org/2022/12/no-remote-employees-arent-becoming-less-engaged (last visited September 9, 2025).

[3] *Zoom Support, Managing participants in a meeting,* ZOOM.US, https://support.zoom.us/hc/en-us/articles/115005759423; *Microsoft Support, Record a meeting in Microsoft Teams*, https://support.microsoft.com/en-us/office/record-a-meeting-in-teams-34dfbe7f-b07d-4a27-b4c6-de62f1348c24 (last visited September 9, 2025).

CLASS ACTION COMPLAINT

button before they can unmute and enable cameras. This doesn't occur when Defendant enters meetings as a silent participant. Defendant doesn't announce its capabilities, doesn't seek consent, and begins recording without any visual, audio, or transcribed disclosure to participants.[4]

21.    Defendant is a global technology company offering a software platform designed to record, transcribe, and analyze spoken conversations including virtual meetings, calls, and webinars.[5]

22.    Defendant advertises itself as a "productivity tool" for professionals and has processed over 1 billion meetings for over 25 million global users ranging from individuals to startups and Fortune 500 companies.

23.    However, Defendant actively participates in calls to intercept, possess, and exploit all participants' communications, often without users' knowledge, later using gathered data for commercial purposes.[6]

24.    Defendant uses advanced generative AI technology providing real-time notes, voice-activated agents that actively participate in meetings, summaries, action items, customized insights, and other meeting content, claiming that these features help users increase productivity and collaborate more effectively with teams.[7]

25.    Defendant enables users to record and transcribe live meetings without automatically notifying or obtaining consent from all participants and transmits live recordings in real-time to its servers and stores them there for later commercial use including training its AI.[8]

---

[4] *About Us,* https://otter.ai/about (last visited September 9, 2025).

[5] *Otter.ai Breaks $100M ARR Barrier and Transforms Business Meetings Launching Industry-First AI Meeting Agent Suite,* (March 25, 2025), https://otter.ai/blog/otter-ai-breaks-100m-arr-barrier-and-transforms-business-meetings-launching-industry-first-ai-meeting-agent-suite (last visited September 9, 2025).

[6] *Id.*

[7] *Features,* https://otter.ai/features (last visited September 9, 2025).

[8] *Privacy Policy,* https://otter.ai/privacy-policy (last visited September 9, 2025).

CLASS ACTION COMPLAINT

26.    Defendant's default functionality relies on its "Otter Assistant" feature, which automatically joins virtual meetings via Zoom, Google Meet, Microsoft Teams, and other platforms by syncing with users' calendars and is enabled by default so Otter Assistant will join meetings through calendar events.[9]

27.    Around February 2023, Defendant introduced the feature with a pop-up setup page prompting users to enable "Otter Assistant" to automatically take notes for any Zoom, Meet, or Teams meeting on their calendar.[10]

28.    The pop-up setup page included a toggle set to automatically share meeting notes with attendees listed in calendar events.[11]

29.    Many users clicked "Enable Otter Assistant" without realizing they'd given Defendant permission to attend all meetings (even when users aren't present), record entire meetings, and share transcribed notes with non-user attendees (regardless of attendance).

30.    Users often clicked "Enable Otter Assistant" without understanding they'd authorized Defendant to attend all meetings (including when they're absent), record entire meetings, and share transcribed notes with non-user attendees regardless of their participation.

31.    In one now notorious instance, researcher and engineer Alex Bilzerian joined a Zoom meeting with a venture capital firm where Defendant recorded the call and automatically emailed Bilzerian and other participants a transcript containing "hours of their private conversations afterward, where they discussed intimate, confidential details about their business."

---

[9] *Stop Otter Notetaker from automatically joining your meetings*, (July 2025), https://help.otter.ai/hc/en-us/articles/12906714508823-Stop-Otter-Notetaker-from-automatically-joining-your-meetings (last visited September 9, 2025).

[10] Barbara Krasnoff, *How to keep Otter from automatically recording your meetings*, THE VERGE (April 13, 2023), https://www.theverge.com/23660324/otter-record-transcribe-how-to-stop (last visited September 9, 2025).

[11] *Id.*

32.     After alerting the investors about inadvertently sharing confidential firm details, Bilzerian ultimately terminated the potential deal.[12]

33.     Users report that even after noticing and attempting to disable this feature, Defendant's notetaker bot continued joining meetings without further user action, often without their knowledge.

34.     This resulted in Defendant repeatedly appearing in private meetings even after users attempted to disable it.

35.     When Otter Assistant joins calls, it doesn't provide reliable or automatic visual or auditory alerts to non-Defendant-user participants about recording or transcription, unlike Zoom or Microsoft Teams which prominently notify all participants and provide exit/remain choices.[13]

36.     When an Otter Assistant user joins meetings, the application enters as a silent participant and immediately begins recording audio, transcribing contents in real-time while sending and storing recordings and captured data in real-time to its servers.

37.     Defendant does not obtain consent from non-subscriber attendees, nor do most attendees know Otter Assistant isn't simply a participant or bot connected to the host's organization.[14] Only users who have previously created an Otter.AI account and viewed the transcript become aware that their conversations were recorded.

38.     If disclosure occurs at all—as Defendant frequently appears and disappears as a silent participant without messaging—it often happens several minutes after meeting commencement.

39.     Users in the midst of a meeting will often lack the time to investigate Defendant's automated message suggesting only note-taking.

---

[12] Brooke Kato, AI is spying on your workplace gossip and secrets - and sharing them afterward, NEW YORK POST (Oct. 4, 2024), https://nypost.com/2024/10/04/tech/ai-is-spying-on-your-workplace-gossip-and-secrets-and-sharing-them-afterward/ (last visited September 9, 2025).

[13] Zoom Support, Managing recording notifications, https://support.zoom.us/hc/en-us/articles/360048005612 (last visited September 9, 2025).

[14] *How Otter Assistant records and transcribes*, https://help.otter.ai/hc/en-us/articles/36004708313 (last visited September 9, 2025).

40.    Not only is the default option not to notify non-user meeting attendees about conversation recording, but the notification option is only accessible to paid Defendant users.

41.    Though Defendant states it "always recommend[s] getting consent from users before recording and ensuring local laws pertaining to recordings are met," it only offers the option to notify non-user attendees with its "Enterprise plan"—its most expensive offering.[15]

42.    Thus, Defendant frequently records and shares private conversations of meeting participants without their knowledge or consent.

43.    Defendant exploits private, identifying information and recorded Private Information to send automated emails to non-user attendees, often including transcripts and summaries, encouraging them to join its platform.

44.    Beyond spamming non-users with promotional emails, Defendant uses recordings for various purposes including improving services, training algorithms/products, processing job applications (for Defendant positions), social network support (sending messages purportedly on users' behalf), contracting vendors, research, and sharing collected data with third parties including analytics providers, advertising providers, vendors, social networks, and more.

45.    Beyond secretly recording and transcribing non-user participants' voices and statements, Defendant collects and stores identifying information about these individuals, including names and email addresses, by extracting data from users' calendar invites and meeting metadata, often without users' knowledge or consent.[16]

46.    Although Defendant sends an email all call invitees after calls conclude, meeting participants must sign up for Defendant to access the recording and transcribed notes.

---

[15]    *Enforce    pre-meeting    recording    notifications*,    https://help.otter.ai/hc/en-us/articles/13353091821591-Enforce-pre-meeting-recording-notifications (last visited September 9, 2025).

[16] *Privacy Policy*, *supra*, n.8.

47.     Defendant's illegal conduct doesn't stop there. It also trains AI models on recordings collected from users and non-users, despite recordings containing highly personal and private information.[17]

48.     Not only are many Defendant users unaware that Defendant automatically joins meetings, harvests non-user data, and records entire conversations, but most Defendant subscription plans don't provide tools to notify or obtain consent from non-users.

49.     The "Audio Recording" data that Defendant stores often contain sensitive personal information of unsuspecting third parties who never consented to the recording.

50.     During transcription, Defendant captures not only what non-user participants say but assigns speaker labels and timestamps identifying exactly who spoke when. Even if meeting attendees lack Defendant accounts and haven't consented to recording, the platform attempts identifying their names and voices through metadata extracted from meeting invitations, linking this information to specific transcript portions and featuring meeting screenshots potentially including non-user participants' faces.

51.     Defendant has incentive to obtain maximum data regardless of consent because it uses this data for commercial benefits, including—as admitted in fine print—training proprietary artificial intelligence software, improving products/services, marketing, and other purposes discussed above.

52.     However, Defendant takes, processes, stores, and profits from data from individuals who don't use Defendant and never agreed to its terms of service or privacy policy. Defendant thus benefits from obtaining maximum data since it uses it to improve software for commercial purposes regardless of source or consent.

53.     Defendant cannot rely on users' "consent" to justify surveillance of non-users. Not only is Defendant aware many users don't realize it's recording and intercepting all calls, but Defendant subscribers have no authority to waive other meeting participants' privacy rights, nor could they meaningfully obtain informed consent when Defendant itself conceals its data practices'

---

[17] *Id.*

CLASS ACTION COMPLAINT

1    scope. Users don't know the full extent of Defendant's uses of Private Information—such as training

2    AI models or fueling targeted marketing. Consent requires knowledge. Subscribing users lack the

3    full picture, making it impossible to secure lawful consent on anyone else's behalf.

4              **REPRESENTATIVE PLAINTIFF NADINE WINSTON'S EXPERIENCE**

5         54.    Plaintiff, an Illinois resident, is a professional who regularly participates in video

6    conferences as an essential part of her employment responsibilities.

7         55.    In her role, she attends approximately five virtual meetings per week via Zoom,

8    Microsoft Teams, and other video conferencing platforms.

9         56.    These work-related video conferences include sensitive business discussions,

10   strategic planning sessions, confidential project meetings, performance reviews, discussions with

11   clients, internal team meetings, and other professional communications that Plaintiff reasonably

12   expected would remain private among the invited participants.

13        57.    On information and belief, during multiple video conferences, OtterAI's bot joined

14   Plaintiff's meetings without her knowledge or consent and began recording, transcribing, and

15   storing her communications.

16        58.    Plaintiff was never informed that OtterAI would be recording these professional

17   meetings. She didn't see any visual warnings, hear any audio notifications, or receive any indication

18   that her conversations were being captured, transcribed, and permanently stored on OtterAI's

19   servers.

20        59.    During these meetings, Plaintiff discussed confidential business matters, proprietary

21   information, strategic decisions, and other sensitive professional topics that she intended to remain

22   private among the meeting participants. She had a reasonable expectation that these work

23   communications would not be intercepted and exploited by a third-party AI company.

24        60.    Plaintiff neither granted nor would have granted OtterAI consent to record her

25   professional communications if given the opportunity. The unauthorized recording of her work

26   meetings represents a serious breach of her privacy and the confidentiality she requires to perform

27   her job effectively.

28

CLASS ACTION COMPLAINT

61.    Plaintiff didn't authorize OtterAI to indefinitely store her professional communications or exploit them for commercial gain, including using her voice and conversations to train AI models or improve OtterAI's services.

62.    Plaintiff's private professional conversations remain on OtterAI's servers, where the company continues profiting from them despite never obtaining Plaintiff's express and informed consent. This ongoing violation is particularly troubling given the sensitive nature of workplace communications and Plaintiff's professional obligation to maintain confidentiality in her business dealings.

63.    As a result of OtterAI's unauthorized recording and storage of her professional communications, Plaintiff has suffered injury including invasion of privacy, loss of confidentiality, potential professional harm, and the ongoing risk that her sensitive business discussions could be disclosed or misused.

## CLASS ACTION ALLEGATIONS

64.    **Class Definition**: Plaintiff brings this action on behalf of herself and other classes of similarly situated persons, as defined below, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure:

65.    The Nationwide Class that Plaintiff seeks to represent is defined as:

> All individuals who were recorded by Defendant, who didn't have an account with Defendant at the time of recording, at any time within the applicable statute of limitations period(s) and/or while such statutes of limitations were tolled.

66.    The Illinois Subclass that Plaintiff seeks to represent is defined as:

> All individuals who are residents of Illinois, who were recorded by Defendant, who didn't have an account with Defendant at the time of recording, whose voiceprints or other biometric identifiers were captured, collected, or otherwise obtained by Defendant, at any time within the applicable statute of limitations period(s) and/or while such statutes of limitations were tolled.

67.    The Nationwide Class and Illinois Subclass are referred to collectively as the "Classes." Excluded from the Classes are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any of Defendant's officers or directors, any

successor or assign and any Judge who adjudicates this case, including their staff and immediate family.

68.    Plaintiff reserves the right under Federal Rule of Civil Procedure 23 to amend or modify the Classes to include broader scope, greater specificity, further division into subclasses, or limitations to particular issues. Plaintiff reserves the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

69.    The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

70.    **Numerosity:** The exact number of Class Members isn't available to Plaintiff, but individual joinder is clearly impracticable. Millions of people throughout the United States, as well as hundreds of thousands in the Illinois Subclass, likely meet the Class definition. Class Members can be identified through Defendant's records or by other means.

71.    **Commonality:** Commonality requires that Class Members' claims depend upon a common contention such that determining its truth or falsity will resolve an issue central to each claim's validity in one stroke. Here, there's a common contention for all Class Members regarding whether Defendant had the legal right to record and store their private conversations and biometric data.

72.    **Typicality:** Plaintiff's claims are typical of other Class Members' claims in that Plaintiff and Class Members sustained damages arising from Defendant's uniform wrongful conduct and practices in recording and storing their private conversations and biometric identifiers without legal consent.

73.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect Class Members' interests. Plaintiff's claims are made in a representative capacity on behalf of Class Members. Plaintiff has no interests antagonistic to other Class Members' interests. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of Class Members.

74. **Predominance:** Many questions of law and fact common to Plaintiff's and Class Members' claims predominate over any questions affecting individual Class Members. Common questions and/or issues for Class members include, but aren't necessarily limited to:

   a. Whether Defendant violated the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq.*;

   b. Whether Defendant's acts and practices violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*;

   c. Whether Defendant's unauthorized collection of Plaintiff's and Class Members' voiceprints and biometric identifiers was done without informed written consent;

   d. Whether Defendant failed to develop and comply with a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information;

   e. Whether Defendant's unauthorized interception and collection of Plaintiff's and Class Members' Private Information and biometric data was willful;

   f. Whether Defendant was authorized by Plaintiff and Class Members to intercept or collect their Private Information and biometric identifiers;

   g. Whether Defendant misrepresented that it wouldn't surreptitiously obtain Plaintiff's and Class Members' communications and biometric data;

   h. Whether Defendant was unjustly enriched by obtaining Plaintiff's and Class Members' communications and biometric data for commercial benefit, including but not limited to improving its products or artificial intelligence technology;

   i. Whether Defendant violated Plaintiff's and Class Members' privacy rights;

   j. Whether Defendant violated Plaintiff's and Class Members' property rights relating to ownership of their personal information and biometric identifiers;

   k. Whether Plaintiff and Class Members are entitled to actual damages, enhanced damages, punitive damages, statutory damages, or other monetary remedies provided by equity and law;

CLASS ACTION COMPLAINT

l.   Whether injunctive and declaratory relief, restitution, disgorgement, and other equitable relief is warranted.

75.   **Superiority:** This case is appropriate for class certification because class proceedings are superior to all other available methods for fair and efficient adjudication of this controversy as joinder of all parties is impracticable. Damages suffered by individual Class Members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for individual Class Members to obtain effective relief from Defendant's misconduct. Even if Class Members could mount individual litigation, it wouldn't be preferable to a class action, because individual litigation would increase delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA")
### 18 U.S.C. § 2511(1), *et seq.*
### *On behalf of Plaintiff & the Nationwide Class*

76.   Plaintiff repeats, realleges, and fully incorporates all prior paragraphs as if fully stated herein.

77.   The ECPA protects both sending and receipt of communications.

78.   18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

79.   Electronic Communications are "transfer[s] of signs, signals, writing, ... data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic,

photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

80.    The transmission of Plaintiff's audio communication qualifies as "communications" under the ECPA's definition of 18 U.S.C. § 2510(12) because they involve communication between Plaintiff and third parties. Plaintiff and Class Members didn't invite Defendant to record their conversations and didn't knowingly consent to Defendant keeping and profiting from their private communications.

81.    The ECPA defines content, when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

82.    The ECPA defines interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."

83.    The ECPA defines "electronic, mechanical, or other device" as "any device ... which can be used to intercept a[n] ... electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5): Defendant uses its own electronic tools—Defendant software—to intercept virtual meetings, Plaintiff's and Class Members' online conversations occurring on their cell phones, computer devices, and other devices. It transmits the recorded audio and transcribed notes to its own web-servers in real time.

84.    By entering private online meetings to record and then store those communications without consent from all parties, Defendant intentionally intercepted and endeavored to intercept the confidential electronic communications of Plaintiff and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

85.    Specifically, Defendant intercepted Plaintiff's and Class Members' electronic audio and communications, screenshots of live participants, and related metadata—Private Information— via its software, to record, store, and unlawfully misuse Plaintiff's and Class Members' Private Information for its own commercial purposes.

86.     Defendant violated 18 U.S.C. § 2511(1)(d) by intentionally using, or endeavoring to use, the contents of electronic communications of Plaintiff and Class Members, while knowing or having reason to know that information was obtained through interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a).

87.     Defendant intentionally intercepted contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or any State—namely, invasion of privacy, among others.

88.     Defendant didn't obtain express and informed consent from any participants on calls. Defendant's users don't, and can't, consent to Defendant recording entirety of conversations, including conversations on which they themselves aren't even present. As many users report due to Defendant's misleading sign-up process and setup—they never wanted Defendant to join and record conversations initially. Many users experienced shock and embarrassment when learning Defendant joins and records entirety of conversations after gaining calendar access. Many users also complained that after discovering Defendant records conversations, they attempted to disable the auto-joining feature, after which Defendant continued joining and recording calls.

89.     Defendant's true purpose of intercepting and transcribing private communications is committing a tort—invasion of privacy and misappropriation of data. It collects information from calls and calendars it accesses, then bombards non-users with spam about its services. Defendant has also received many complaints notifying them users didn't expect the Defendant bot to join all calls and record entire conversations—and thus it's aware both users and non-users don't expect Defendant to join calls and begin recording.

90.     Defendant wasn't an intended party to communications based on its software joining meetings and recording and transferring these communications without express authorization from Plaintiff and Class Members.

91.     Defendant's acquisition of Plaintiff's and Class Members' communications that were unlawfully intercepted was done for purposes of committing criminal and tortious acts in violation of laws of the United States and individual States nationwide.

92.     Plaintiff and Class Members suffered damages as a direct and proximate result of Defendant's invasion of privacy when learning Defendant intruded upon, intercepted, transmitted, and used their Private Information for commercial purposes.

93.     Defendant received substantial financial benefits from using Plaintiff's and Class Members' private communications without providing any value or benefit to Plaintiff or Class Members, since Defendant used unlawfully acquired data to improve their products, thus increasing revenue and giving itself unfair commercial advantage.

94.     Plaintiff and Class Members suffered diminution in value of their Private Information and loss of privacy due to Defendant secretly obtaining private communications that Defendant wasn't an intended party to, and that Plaintiff and Class Members intended to remain private.

95.     Defendant intentionally used wire or electronic communications to increase profit margins. Defendant specifically used Otter Assistant to obtain audio communications and other private data for financial gain and to improve artificial intelligence technology.

96.     Defendant wasn't acting under color of law to intercept Plaintiff's and Class Members' wire or electronic communication.

97.     Plaintiff and Class Members didn't authorize Defendant to acquire their communications' content for purposes of invading their privacy.

98.     Meeting hosts also didn't consent to Defendant's recording, transcription or transmission of their private recordings and Defendant failed to provide proper notice to meeting hosts and other parties being recorded.

99.     Any purported consent Defendant received from Plaintiff and Class Members wasn't valid as it wasn't knowingly and intentionally given.

100.    As a result of Defendant's ECPA violation, Plaintiff and the Class are entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is greater of $100 a day for each day of violation or $10,000, equitable and declaratory relief requiring Defendant to cease these practices and delete unlawfully gathered information, compensatory and punitive damages, and attorney's fees and costs.

CLASS ACTION COMPLAINT

101.    The declaratory and injunctive relief sought includes, but isn't limited to:

a.    Entering declaratory judgment against Defendant declaring that Defendant's interception of Plaintiff's and Class Members' private communications violates the law;

b.    Entering an injunction against Defendant: i. Prohibiting Defendant from intercepting Plaintiff's and Class Members' Private Information and requiring unlawfully gathered information be destroyed; ii. Requiring Defendant to alert and/or otherwise notify all users what information is, or was, collected, used, stored, and shared; iii. Requiring Defendant to obtain express consent from all parties to a communication before it records, stores, transmits, shares, processes, or otherwise uses any private communications or information; iv. Requiring Defendant to delete all illegally obtained conversations; v. Requiring Defendant to provide clear disclosure of their practices concerning collection of private communications and information from both its users and third parties, as well as uses of such data; and, vi. Requiring that Defendant permanently cease its unlawful collection of private communications and information.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE ILLINOIS BIOMETRIC PRIVACY ACT ("BIPA")
### 740 ILCS 14/1, et seq.
### *(On behalf of Plaintiff & the Illinois Subclass)*

102.    Plaintiff repeats, realleges, and fully incorporates all prior paragraphs as if fully stated herein.

103.    Plaintiff brings this claim on behalf of the Illinois Subclass as defined above.

104.    BIPA protects individuals' privacy rights in their biometric identifiers and biometric information, providing a private right of action for violations.

105. Under BIPA, "biometric identifier" includes a "voiceprint" and "biometric information" means any information, regardless of how it's captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. 740 ILCS 14/10.

106. Defendant captures, collects, and analyzes voice recordings of Illinois Subclass members during virtual meetings, creating voiceprints and voice-based biometric identifiers to identify specific speakers and attribute statements to particular individuals throughout transcripts.

107. Defendant's technology analyzes vocal characteristics including tone, pitch, cadence, and other unique voice attributes to distinguish between speakers, label them in transcripts, and maintain speaker consistency throughout recordings—constituting collection and use of voiceprints under BIPA.

108. Defendant violated BIPA Section 15(a) by failing to develop, publicly disclose, and comply with a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with Defendant, whichever occurs first.

109. Defendant violated BIPA Section 15(b) by collecting, capturing, and otherwise obtaining Illinois Subclass members' biometric identifiers and biometric information without: a. Informing them in writing that biometric identifiers or biometric information was being collected or stored; b. Informing them in writing of the specific purpose and length of term for which biometric identifiers or biometric information was being collected, stored, and used; and c. Receiving a written release executed by the subject of the biometric identifier or biometric information.

110. Defendant never informed Illinois Subclass members that it was collecting their voiceprints and voice-based biometric data, never disclosed how long this data would be retained, never disclosed the purposes for collection including AI training and commercial exploitation, and never obtained written consent from any Illinois Subclass member.

111. Defendant violated BIPA Section 15(c) by selling, leasing, trading, or otherwise profiting from Illinois Subclass members' biometric identifiers and biometric information, including using voiceprints to improve its AI technology, enhance its services, and increase its commercial value.

112. Defendant violated BIPA Section 15(d) by disclosing and disseminating Illinois Subclass members' biometric identifiers and biometric information to third parties including analytics providers, advertising technology companies, vendors, and others without consent of the subjects of the biometric identifiers or information.

113. Defendant violated BIPA Section 15(e) by failing to store, transmit, and protect from disclosure Illinois Subclass members' biometric identifiers and biometric information using the reasonable standard of care within its industry and failing to use protective measures that are the same as or more protective than the manner in which it stores, transmits, and protects other confidential and sensitive information.

114. Defendant's violations were intentional and reckless, as it knew or should have known that it was collecting biometric data from individuals who hadn't consented to such collection and that its practices violated Illinois law protecting biometric privacy.

115. Defendant's violations were done for commercial purposes, using Illinois Subclass members' biometric data to enhance its products, train its AI systems, and increase its market value without providing any compensation to those whose biometric data was exploited.

116. As a direct and proximate result of Defendant's BIPA violations, Illinois Subclass members suffered actual damages including: a. Invasion of their legally protected privacy rights in their biometric identifiers and information; b. Unauthorized collection, use, and dissemination of their biometric data; c. Deprivation of the value of their biometric information; d. Continued risk of unauthorized disclosure of their biometric data stored indefinitely on Defendant's servers.

117. Illinois Subclass members are entitled to statutory damages of $1,000 for each negligent violation and $5,000 for each intentional or reckless violation of BIPA under 740 ILCS 14/20.

118. Illinois Subclass members are also entitled to injunctive relief requiring Defendant to:

a. Cease collection of biometric identifiers and information without proper consent;

b. Delete all illegally collected biometric data;

c. Develop and implement a publicly available written policy for retention and destruction of biometric data as required by BIPA;

d. Comply with BIPA's informed consent requirements before any future collection of biometric data.

119. Illinois Subclass members are further entitled to reasonable attorneys' fees and costs, expert witness fees, and other litigation expenses under 740 ILCS 14/20(3).

## THIRD CAUSE OF ACTION

**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**
**Cal. Penal Code § 631, *et seq.***
**_(On Behalf of Plaintiff & the Nationwide Class)_**

120. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

121. Plaintiff brings this claim individually and on behalf of the members of the Nationwide class against Defendant.

California Penal Code § 631(a) establishes liability for any person who:

[I]ntentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

Or

[W]illfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

[U]ses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

Or

CLASS ACTION COMPLAINT

[A]ids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

122.    Section 631(a) is not limited to traditional telephone communications but applies broadly to modern electronic communications, including those transmitted via the Internet. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (holding CIPA applies to Internet communications).

123.    California courts have specifically recognized that the use of software code to intercept and record a user's website communications, without the user's knowledge or consent, can constitute a violation of CIPA. *See, e.g., Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021); *Javier v. Assurance IQ, LLC*, No. 20-16700, 2022 WL 1744107 (9th Cir. May 31, 2022).

124.    Defendant's product constitutes a "machine, instrument, contrivance, or ... other manner" within the meaning of Section 631(a). This technology is specifically designed to intercept and record electronic communications.

125.    At all relevant times alleged herein, Defendant:

a.    Intercepted internet communications sent by and to Plaintiff and Class members;

b.    Willfully and without the consent of all parties to the communications, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and Class members while those communications were in transit or passing over wires, lines or cables;

c.    Used the information obtained through such unauthorized interception for its business purposes, including marketing optimization and lead generation; and

d.    Intercepted private communications without authorization.

126.    Plaintiff and Class members did not consent to any of Defendant's actions in implementing or using any technology to intercept their communications. Specifically:

a.    Defendant never obtained express consent from Plaintiff or Class members before intercepting their communications;

b. Defendant began intercepting communications immediately upon the start of a video session, before any opportunity to review terms of service or privacy policies;

c. Plaintiff and class members were not presented with Defendant's Terms of Use or Privacy Policy;

d. Defendant never provided clear, conspicuous notice that video conference participants' communications would be recorded in their entirety and shared with a third party;

e. Any purported consent was ineffective because the interception began before consent could be obtained and because the disclosures were inadequate to inform users of the actual scope and nature of the interception.

127.    Unless enjoined and restrained by this Court, Defendant will continue to commit these illegal acts. Plaintiff has a reasonable fear that their communications will continue to be intercepted without their consent on all future video calls, as these are an inevitable aspect of modern work and may be implemented without any party's knowledge.

128.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class members are entitled to:

a. A preliminary and permanent injunction prohibiting Defendant from continuing their unlawful conduct;

b. Statutory damages of $5,000 per violation; and

c. Any other relief the Court deems proper.

129.    Plaintiff and the Nationwide class members have suffered loss by reason of these violations, including but not limited to violation of their right to privacy.

## **FOURTH CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT
Cal. Penal Code § 632, *et seq.*
*(On Behalf of Plaintiff & the Nationwide class)***

130.    Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

131.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide class against Defendant.

132.    California Penal Code Section 632(a) provides that:

> [E]very person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished[.]

133.    California Penal Code Section 632(c) defines "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, or other public proceeding in which the public is entitled to attend, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

134.    The communications of Plaintiff and Nationwide class members constitute "confidential communications" within the meaning of Section 632(c) because:

a.   The communications occurred in circumstances where participants had an objectively reasonable expectation that their conversations were not being overheard or recorded by unauthorized third parties;

b.   Meeting participants joined private virtual meetings with limited, invited attendees, not public broadcasts;

c.   The meetings often involved sensitive topics including medical consultations, legal strategy discussions, therapy sessions, financial planning, business negotiations, and other inherently confidential matters;

d.   Participants had no knowledge that Defendant was recording their conversations, as it joined meetings disguised as a regular participant without providing notice of its recording capabilities;

e.   The virtual meeting platforms themselves (Zoom, Teams, etc.) require explicit consent before their native recording features can be activated, reinforcing participants' reasonable expectation that no recording would occur without similar notification;

CLASS ACTION COMPLAINT

f.  Many meetings were explicitly designated as confidential by their organizers or participants.

135.  Defendant's recording of Plaintiff's and Nationwide class members' confidential communications was accomplished without the consent of all parties to the communication, specifically:

a.  Plaintiff and Class members never consented to having their confidential communications recorded;

b.  Defendant never obtained express consent before recording Plaintiff or class members;

c.  Users were not informed that their communications would be recorded;

d.  No clear, conspicuous notice was provided regarding the scope and nature of the recording of confidential communications;

e.  The recording began immediately upon anyone in the video conference opening the application, without providing other members with any opportunity to review privacy policies or provide informed consent.

136.  Defendant's conduct was undertaken intentionally and with knowledge that their product would record confidential communications without proper consent from all parties.

137.  As a direct and proximate result of Defendant's violations of Section 632, Plaintiff and Class members have suffered harm including invasion of their privacy rights, violation of confidentiality, and loss of control over their sensitive information.

138.  Unless enjoined and restrained by this Court, Defendant will continue to commit these violations. Plaintiff and Class members have a reasonable fear that their confidential communications will continue to be unlawfully recorded if they use video conferencing services.

139.  Pursuant to California Penal Code Section 637.2, Plaintiff and Class members are entitled to:

a.  A preliminary and permanent injunction prohibiting Defendant from continuing their unlawful recording of confidential communications;

b.  Statutory damages of $5,000 per violation;

c.  Punitive damages for Defendant's willful and egregious violations of medical privacy; and

d.  Any other relief the Court deems proper.

140.  Plaintiff and Class members seek all available remedies under California Penal Code Section 632 and related provisions for Defendant's unlawful recording of confidential communications.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT–PEN REGISTER
### Cal. Penal Code §§ 638.50–638.56
### *(On Behalf of Plaintiff & the Nationwide Class)*

141.  Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs.

142.  The California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630–638.56, prohibits any person from installing or using a pen register or a trap-and-trace device without first obtaining a court order. Cal. Penal Code § 638.51(a). "Pen register" and "trap-and-trace device" are defined to include any device or process that captures dialing, routing, addressing, or signaling information ("DRAS") associated with wire or electronic communications. Cal. Penal Code § 638.50(b)–(c).

143.  CIPA provides a private right of action to "[a]ny person who has been injured by a violation of this chapter," including violations of § 638.51, allowing recovery of statutory damages of $5,000 per violation or treble actual damages, as well as injunctive relief. Cal. Penal Code § 637.2.

144.  In the ordinary course of its business, Defendant installs and uses processes (including but not limited to its "Otter Assistant" bot, meeting-join automation, and associated back-end instrumentation) that, contemporaneous with live meetings, capture and log DRAS information relating to participants' electronic communications, including meeting identifiers/URLs, call join/leave signals, addressing and signaling data identifying participants and their devices, and other connection metadata. Defendant does so without a court order, and not as a provider operating or maintaining a wire or electronic communication service within the meaning of § 638.51(b).

145.   Defendant is not a "provider of electronic or wire communication service" to Plaintiff or Class members because Zoom, Microsoft Teams, Google, and other video conference hosting services are the conferencing providers, not Defendant. Defendant therefore cannot invoke the § 638.51(b) service-provider exceptions (operate/maintain/test; protect provider's rights/property; record consented numbers).

146.   By deploying its bot and related processes to capture DRAS information associated with Plaintiff's and Class members' electronic communications during their meetings—separate and apart from any content transcription—Defendant installed and used a pen register and/or trap-and-trace device without first obtaining a court order, in violation of Cal. Penal Code § 638.51(a).

147.   Plaintiff and Class members were injured by these violations, including through the loss of control over their dialing, routing, addressing, and signaling information, the invasion of their legally protected privacy interests in non-content metadata that reveals sensitive information about their communications (e.g., who communicated with whom, when, and via what channels), and the ongoing risk of misuse and further dissemination.

148.   Pursuant to Cal. Penal Code § 637.2(a)–(c), Plaintiff and the Class seek: (a) statutory damages of $5,000 per violation or treble actual damages, whichever is greater; and (b) injunctive relief enjoining Defendant from installing or using any pen-register or trap-and-trace process absent a court order or a statutory exception, and requiring deletion of DRAS information collected in violation of § 638.51.

149.   Plaintiff and the Class further seek attorneys' fees, costs, and such additional relief as the Court deems proper.

## SIXTH CAUSE OF ACTION

### INVASION OF PRIVACY
### California Constitution, Art. 1, § 1
### *(On Behalf of Plaintiff & the Nationwide Class)*

150.   Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

151.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

152.    Article I, Section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

153.    The California Constitution creates a private right of action against private entities that violate an individual's privacy rights.

154.    To establish a claim for invasion of privacy under the California Constitution, a plaintiff must demonstrate: (i) a legally protected privacy interest; (ii) a reasonable expectation of privacy; and (iii) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of social norms.

155.    Plaintiff and Class members have a legally protected privacy interest in their private communications during virtual meetings, especially when those communications include sensitive personal, medical, legal, financial, or business information. They also have a legally protected interest in not having their electronic communications intercepted, recorded, transcribed, and disclosed to unauthorized third parties without their knowledge or consent.

156.    Plaintiff and Class members reasonably expected that their communications during virtual meetings would remain private among the intended participants and would not be intercepted, recorded in their entirety, transcribed, or disclosed to third parties such as Defendant without their knowledge or consent. This expectation was reasonable because:

    a.    No conspicuous notice during meetings informed participants that their conversations would be recorded and transcribed by Defendant;

    b.    Participants were not presented with or required to agree to any waiver before their communications were intercepted;

c.  A reasonable person would not expect that confidential discussions—including medical consultations, legal strategy sessions, therapy appointments, and business negotiations— would be recorded and stored by a third-party AI company;

d.  The information shared during virtual meetings is often inherently private and confidential in nature;

e.  Major platforms like Zoom and Teams have built-in safeguards requiring explicit consent before recording, creating a reasonable expectation that unauthorized recording would not occur without similar notifications.

157.  Serious Invasion: Defendant's conduct constitutes a serious invasion of privacy because:

a.  The interception and recording of communications was comprehensive, capturing every word spoken, identifying individual speakers, taking screenshots, and creating permanent transcripts of entire meetings;

b.  The interception occurred without participants' knowledge or consent, with Defendant entering meetings as a silent participant that appeared to be a regular attendee;

c.  The interception captured highly sensitive personal information including medical discussions, legal strategies, financial information, trade secrets, and other confidential communications;

d.  The interception served primarily to benefit Defendant commercially through training its AI models, improving its services, and expanding its user base, not to protect participants or provide them with requested services;

e.  The interception was conducted in a deceptive manner, with Defendant disguising its presence and failing to provide adequate disclosure of its recording activities;

f.  Less invasive alternatives were available to Defendant to achieve any legitimate business purposes, such as requiring explicit consent from all participants before recording.

158.  Defendant's conduct constitutes an egregious breach of social norms. Society recognizes and values an individual's right to participate in virtual meetings without having every word secretly

CLASS ACTION COMPLAINT

monitored, recorded, transcribed, and shared with third parties who then exploit that information for commercial gain.

159.    Defendant's invasion of Plaintiff's and Class members' privacy is serious in nature, scope, and impact, affecting millions of individuals across thousands of organizations who had their most sensitive communications captured without consent.

160.    Defendant's conduct proximately caused damage to Plaintiff and Class members, including but not limited to violation of their constitutional right to privacy, loss of confidentiality, unauthorized disclosure of sensitive information, and commercial exploitation of their private communications.

161.    Unless enjoined and restrained by this Court, Defendant will continue to invade Plaintiff's and Class members' privacy rights through its ongoing interception and exploitation of private communications.

162.    Plaintiff and Class members seek: i. an injunction that prohibits Defendant from recording meetings without proper notice and consent from all participants; ii. an order requiring Defendant to destroy all data collected through the unlawful monitoring; iii. implementation of safeguards to prevent future unauthorized recording; and iv. any other relief the Court deems proper.

## SEVENTH CAUSE OF ACTION

### UNJUST ENRICHMENT
### (*On Behalf of Plaintiff & the Nationwide Class*)

163.    Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

164.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant.

165.    Defendant has been unjustly enriched at the expense of Plaintiff and Class members through its unauthorized collection, use, and monetization of their private communications.

166.    Plaintiff and Class members conferred a benefit upon Defendant by providing biometric and other information.

167.   Defendant received and retained this benefit by intercepting and collecting Plaintiff's and Class members' biometric information.

168.   Defendant has been unjustly enriched through several mechanisms:

    a.   Data Monetization: Defendant derives commercial value from collecting users' biometric information;

    b.   Cost Avoidance: Defendant avoided the substantial costs of obtaining proper consent, implementing adequate privacy protections, and securing lawful access to this valuable data;

    c.   Competitive Advantage: Defendant gained unfair competitive advantages by leveraging detailed data profiles to optimize its platform and marketing without bearing the costs associated with compliant data collection.

    d.   Enhanced Platform Value: The unauthorized collection of comprehensive user data increases the overall value and effectiveness of Defendant's platform.

169.   Defendant obtained this benefit through unlawful interception and unauthorized disclosure of protected biometric and communications information.

170.   Plaintiff and Class members provided this valuable information in the context of confidential communications with a reasonable expectation of privacy, which Defendant actively concealed its data collection and sharing practices from users who were unaware their information was being intercepted.

171.   Defendant's retention of these benefits violates fundamental principles of fairness and equity, as Defendant has profited from the unauthorized exploitation of some of private communications without providing any compensation or benefit to the individuals whose privacy was violated.

172.   Plaintiff and Class members have no adequate remedy at law for Defendant's unjust enrichment, as they cannot recover the specific value of their appropriated data through traditional damages calculations.

CLASS ACTION COMPLAINT

173.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and Class members are entitled to restitution and disgorgement of all benefits, profits, and value that Defendant has obtained through the unauthorized collection and use of their private communications.

174.    Plaintiff and Class members seek judgment requiring Defendant to disgorge all profits, benefits, and value obtained through its unlawful conduct, together with interest thereon, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Nadine Winston, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Defendant Otter.ai, Inc. and in favor of Plaintiff and the Classes, and grant the following relief:

A.    Certify this case as a class action on behalf of the Classes defined above, appoint Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.    Award injunctive and other equitable relief as necessary to protect the interests of Plaintiff and the Classes, including (i) an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein; (ii) an order requiring Defendant to implement proper notice and consent mechanisms before intercepting, recording, or otherwise collecting communications; and (iii) an order requiring Defendant to destroy all data collected through unlawful monitoring practices;

C.    Award statutory damages to Plaintiff and the Classes under (i) the Electronic Communications Privacy Act, 18 U.S.C. § 2520(c)(2), in the amount of the greater of $100 per day for each day of violation or $10,000 per violation, or actual damages and any profits made by Defendant, whichever is greater; (ii) the Illinois Biometric Information Privacy Act, 740 ILCS 14/20, including $1,000 for each negligent violation and $5,000 for each intentional or reckless violation; and (iii) the California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632, and 638, awarding $5,000 per violation;

D.    Award restitution and disgorgement of Defendant's unjust enrichment, including all revenue derived from its unlawful business practices;

E.    Award Plaintiff and the Classes reasonable litigation expenses and attorneys' fees;

F.    Award Plaintiff and the Classes pre- and post-judgment interest to the extent allowable; and

G.    Award such other and further relief as equity and justice may require.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.

Dated: September 10, 2025                     Respectfully submitted,

*/s/ John R. Parker, Jr.*
John R. Parker, Jr. (SBN 257761)
3550 Watt Avenue, Suite 140
Sacramento, California 95821
Tel: (916) 616-2936
jrparker@almeidalawgroup.com

David S. Almeida*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Tel.: (708) 437-6476
david@almeidalawgroup.com

*pro hac vice application forthcoming*

*Attorneys for Plaintiff & the Putative Classes*

CLASS ACTION COMPLAINT